FILED

2021 Mar-24  AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| JOHNNY THOMAS SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:19-CV-01919-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Johnny T. Sanders, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB").  Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was 46 years old at the time of the Administrative Law Judge's ("ALJ's") first unfavorable decision that was issued on November 23, 2016.  (Tr. at 117, 119.)  Plaintiff appealed this unfavorable decision, and the Appeals Council

remanded this case back to the ALJ on October 17, 2017. (Tr. at 126.)  The ALJ issued a second unfavorable decision on November 21, 2018. (Tr. at 10-23.)  Plaintiff was 48 years old at the time of the ALJ's second unfavorable decision.  (Tr. at 21.) Plaintiff has an eighth-grade education, and his past work experiences include employment as a floor layer and carpenter helper. (Tr. at 65, 52-53, 71, 329.)  Plaintiff claims that he became disabled on January 31, 2013, due to back issues.  (Tr. at 76, 292, 328.)   Plaintiff also claims he suffers from neck problems, migraines, and hypertension.  (Tr. at 54, 66, 415.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's physical and mental medically determinable impairments ("MDI").

*See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.   *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   The decision depends on the medical evidence contained in the record.   *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step.   *See id.* §§ 404.1520(e), 416.920(e).   The fourth step requires the evaluator to determine

whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. at 12.)  The ALJ further determined that Plaintiff has not engaged in SGA since January 31, 2013, the alleged onset date of his disability. (Tr. at 12.) According to the ALJ, Plaintiff has the following severe impairments: chronic low back pain, migraine headaches, and borderline intellectual functioning.   (20 C.F.R. §§ 404.1520(c), 416.920(c)). (Tr. at 12.)  These impairments are considered "severe" based on the requirements set forth in the regulations.  (*Id.*)  However, the ALJ

determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).   The ALJ determined that Plaintiff has the following RFC:

> [T]o perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).  The claimant can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl.  The claimant can carry out simple instructions and sustain attention to routine/familiar tasks for extended periods.  The claimant can tolerate ordinary work pressures but should avoid quick decision-making, rapid changes, and multiple demands.  The claimant would benefit from regular rest breaks and a slower pace but would be able to maintain work pace consistent with the mental demands of competitive level work.  The claimant can interact with supervisors, coworkers, and the general public, but contact with the public should be casual and feedback should be supportive.  The claimant could adapt to infrequent, well-explained changes.

(Tr. at 14.)

According to the ALJ, Plaintiff is "unable to perform any past relevant work." (Tr. at 21.)  The ALJ also determined that Plaintiff is a "younger individual age 18-49."  (*Id.*)  The ALJ enlisted a Vocational Expert ("VE") at Plaintiff's hearing who used the Medical-Vocational Rules to determine if there are jobs in the national economy that Plaintiff is capable of performing.  The VE found that there are jobs that exist in significant numbers in the national economy that Plaintiff would be able

to perform, such as a tagger, inspector, and garment folder.  (Tr. at 22.)  The ALJ

concluded his findings by stating that Plaintiff "has not been under a disability, as

defined in the Social Security Act, from January 31, 2013, through the date of this

decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is

a narrow one.  The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied.  *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).   This Court gives

deference to the factual findings of the Commissioner, provided those findings are

supported by substantial evidence, but applies close scrutiny to the legal conclusions.

*See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute

its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir.

2004)).  "The substantial evidence standard permits administrative decision makers

to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181

(11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383

U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by

substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d

1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for

review of claims], it is imperative that th[is] Court scrutinize the record in its entirety

to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d

622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir.

1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.

*See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Plaintiff alleges that the ALJ's decision should be reversed and remanded for

two reasons: (1) the ALJ failed to accord proper weight to the opinion of one-time

examining consultative physician, Dr. Nathaniel Hernandez, M.D.; and (2) the ALJ

erred in following the remand instructions of the Appeals Council.

### A.   The Weight to Opinion of Dr. Hernandez, Consultative Physician

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined

you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . .." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). As such, the opinions of one-time examiners are not entitled to any special deference or consideration. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of a doctor who conducted a single examination and who was not a treating doctor). Importantly, however, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Plaintiff was examined by Dr. Hernandez on February 23, 2015. (Tr. at 486.) At the examination, Plaintiff complained of lower back pain and bilateral elbow pain. (*Id.*) Dr. Hernandez noted that Plaintiff walked at a normal pace, but exhibited a stiff gait, and experienced mild discomfort while sitting and "moderate tenderness to the palpitation of the midline lumbar spine." (Tr. at 488.) Ultimately, Dr. Hernandez

stated that Plaintiff would likely benefit from an assistive device for "long distances and uneven terrain" and was limited to standing and walking a maximum of four hours per day. (Tr. at 490-91.) However, Dr. Hernandez noted that Plaintiff's maximum sitting capacity had no limitations, his maximum lifting and carrying capacity is occasionally 10-20 pounds and frequently 5-10 pounds, his fine and gross manipulative activities demonstrated no limitation in reaching overhead or forward, and he is frequently able to handle, finger or feel. (Tr. at 491.) Dr. Hernandez also opined that Plaintiff would be able to frequently climb steps and occasionally climb ladders, stoop, crouch, kneel, or crawl. (*Id.*)

The ALJ gave little weight to Dr. Hernandez's opinion that Plaintiff was limited with standing and walking for four hours a day and required an assistive device for long distances and uneven terrain. (Tr. at 21.) Substantial evidence supports the ALJ assigning little weight to Dr. Hernandez's opinion. First, Dr. Hernandez was only a one-time consultative physician, although Plaintiff refers to him as a treating physician. (Doc. 9 at Page 23.) Therefore, the ALJ is not obligated to give any deference to Dr. Hernandez's opinion. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme*, 518 F. App'x at 877.

The ALJ also noted that Plaintiff reported to Dr. Hernandez that he continued to do small part-time jobs, such as framing and performing light construction work one or two days a week, which undermines Dr. Hernandez's opinion that Plaintiff could not stand or walk for four hours a day. (Tr. at 19, 487.)  Furthermore, the ALJ pointed out that Dr. Hernandez's findings were inconsistent with the findings of Plaintiff's treating physicians and the overall medical record.  (Tr. at 21.)   For instance, Plaintiff visited Alabama Anesthesiology and Pain Consultants ("AAPC") from February 2015 through June 2017.  (Tr. at 507-85, 599-603, 630-93.)  He was examined by Dr. Dennis Doblar, M.D., on February 4, 2015, a little less than three weeks before his examination by Dr. Hernandez.  (Tr. at 557.)  During this visit, Dr. Doblar noted that Plaintiff denied any limb pain while walking, had a normal gait, and was able to heel and toe walk.  (Tr. at 558.)  One month later, on March 4, 2015, Plaintiff reported that his pain was relieved by 70% by taking medications, and he rated his functional level at that time as 6 out of 10.  (Tr. at 554.)  The results of the physical examination were the same as those a month prior; Plaintiff denied limb pain while walking, had a normal gait, and was able to heel and toe walk.  (Tr. at 555.)  Even at Plaintiff's most recent visit to AAPC on June 20, 2017, Plaintiff reported that his pain was relieved by 40% by taking medications.  (Tr. at 633.)  As with the

physical examinations before, Plaintiff denied limb pain while walking, had a normal gait, and was able to heel and toe walk.  (Tr. at 634.)

The treatment notes from AAPC never mention any limitations on Plaintiff's ability to walk or stand.  As the records show, Plaintiff was seen by AAPC for over two years; however, Plaintiff was only examined by Dr. Hernandez on one occasion.  Here, the ALJ properly evaluated the relevant evidence and the opinion of Dr. Hernandez.  The ALJ's decision to only assign little weight to Dr. Hernandez's opinions is supported by substantial evidence.

### B.    The ALJ Complied with the Remand Instructions of the Appeals Council

The Appeals Council may vacate a hearing decision and remand the case to an ALJ for further inquiry into an issue.  *See* 20 C.F.R. §§ 404.977, 416.1477.  The Appeals Council remanded Plaintiff's case back to the ALJ on November 10, 2017. (Tr. at 126.)  On remand, the ALJ was instructed to "[g]ive further consideration to [Plaintiff's] maximum residual function capacity and provide appropriate rationale with specific references to evidence of records in support of the assessed limitations."  (Tr. at 126.)  The ALJ was further instructed to give Plaintiff an opportunity for a hearing and to take any further action needed to complete the administrative record.  (*Id.*)

The ALJ fully complied with these directives, holding a hearing on remand on March 20, 2018. (Tr. at 62-73.) The ALJ issued a new decision on November 21, 2018, that included an RFC comprised of all the limitations supported by the records, which the ALJ discussed in detail. (Tr. at 10-23). The Appeals Council explained that the ALJ's first decision was erroneous because the RFC contained no limitations related to Plaintiff's impairment of borderline intellectual functioning. (Tr. at 125-26.) The RFC is an assessment based on all relevant evidence of the plaintiff's ability to work despite his limitations. *See Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "A limited ability to carry out certain mental activities… may reduce [a plaintiff's] ability to do past work and other work." *See* 20 C.F.R. §§ 404.1545(c), 416.945(c).

In his remand decision, the ALJ specifically found in assessing Plaintiff's RFC that Plaintiff retained the ability to carry out simple instructions and sustain attention to routine/familiar tasks for extended periods but that Plaintiff should "avoid quick decision-making, rapid changes, and multiple demands," take regular breaks to keep up with the mental demands of work, and could "interact with supervisors, coworkers and the general public." (Tr. at 14.) The ALJ also noted that Plaintiff could adapt to infrequent, well-explained changes. (*Id.*) The ALJ further found that Plaintiff would benefit from regular rest breaks and a slower pace but would be able

to maintain a work pace consistent with the mental demands of competitive level work. (*Id.*) Thus, the ALJ followed the Appeal Council's instructions in the new decision by clarifying how Plaintiff's RFC relates to mental limitations arising from Plaintiff's borderline intellectual functioning. *See* 20 C.F.R. §§ 404.1520(a), (e), 404.1545(a), 416.920(a), (e), 416.945(a); *Perkins v. Comm'r of Soc. Sec. Admin.*, 553 F. App'x 870, 875-76 (11th Cir. 2014) (noting that the ALJ accounted for moderate limitations in mental function by limiting claimant to simple tasks in a structured environment with limited public contact and no close coordination with coworkers).

Furthermore, substantial evidence in the record supports the ALJ's RFC assessment on remand. On April 2, 2015, Dr. Sharon D. Waltz, a consultative psychologist, found Plaintiff was fully oriented and had adequate attention and concentration. (Tr. at 494.) Plaintiff could count backward from twenty, recall three of three words both immediately and after five minutes, and recited six digits forward and four digits backward. (*Id.*) Plaintiff was also able to recall prior dates and events from his life history, name the president and governor, and report on current news. (*Id.*) Plaintiff also had fair insight and judgment. (*Id.*) Such findings support the ALJ's conclusion that Plaintiff was able to perform light work with some mental restrictions. (Tr. at 14, 17-18, 20.) *See also Williams v. Acting Comm'r Soc. Sec.*, 649 F. App'x 1000, 1002 (11th Cir. 2016) (concluding that the ALJ's finding that Plaintiff

retained the mental RFC to perform simple work was supported, in part, by findings that he was cooperative, had intact memory, fair judgment, and demonstrated adequate concentration and attention); *Riggs v. Soc. Sec. Admin., Comm'r*, 522 F. App'x 509, 511 (11th Cir. 2013) (holding that the ALJ's conclusion that Plaintiff was capable of performing simple light work was supported by substantial evidence, where an evaluation showed that his mood and affect were stable and he had the cognitive ability to understand, remember, and follow through with instructions and interact with co-workers).

Dr. Waltz also opined that Plaintiff's ability to "function primarily independently (with assistance)," "understand, carry out and remember instructions," and ability to respond "appropriately to supervision, coworkers, and work pressures in a work setting, despite his impairments are mildly impaired to moderately impaired." (Tr. at 495.) The ALJ gave substantial weight to this opinion, noting that the opinion was supported by Plaintiff's hearing testimony, insofar as he did not require any assistance or additional explanation from the ALJ or his attorney. (Tr. at 21, 62-73.) *See Buley v. Comm'r of Soc. Sec.*, 739 F. App'x 563, 572 (11th Cir. 2018) (holding that the ALJ was permitted to consider Plaintiff's demeanor at the hearing as one of many factors in evaluation his credibility).

Finally, Plaintiff testified that he was able to drive, cook, help with household chores, assist his disabled uncle with shopping and getting firewood, perform yard work, care for pets, and handle his own personal care.  (Tr. at 350-54, 487-88, 495.) Plaintiff's ability to perform these activities provides further support for the ALJ's findings that Plaintiff retained the capacity to work with appropriate mental restrictions.  (Tr. at 14.)  *See Cocheley v. Soc. Sec. Admin.*, 707 F. App'x 656, 660 (11th Cir. 2017) (holding that substantial evidence supported the RFC finding, including evidence that, despite her bipolar disorder, claimant was able to drive, get her child ready for school in the morning, do laundry, shop, cook with minimal assistance, and go to doctor's appointments).

In sum, the ALJ fully complied with the Appeals Council's instructions on remand.  The limitations on Plaintiff's RFC discussed by the ALJ are supported by the substantial evidence in the medical record.  (Tr. 17-18, 493-495.)

## IV.    Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 24, 2021.

_____
L. Scott Coogler
United States District Judge

160704